817 F.2d 34
 43 Fair Empl.Prac.Cas. 1030,
43 Empl. Prac. Dec. P 37,002, 1 A.D. Cases 1058
 Richard FOSS, Plaintiff-Appellant,
v.
CITY OF CHICAGO, a municipal corporation, Louis Galante,
City of Chicago Fire Commissioner, and Charles
Pounian, Commissioner of Personnel,
Defendants- Appellees.
 No. 86-2435.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 23, 1987.
Decided April 20, 1987.
 
 Miriam N. Geraghty, Kinoy, Taren, Geraghty & Potter, P.C., Chicago, Ill., for plaintiff-appellant.
 Lynn K. Mitchell, Asst. Corp. Counsel, Chicago, Ill. (Judson H. Miner, Acting Corp. Counsel), for defendants-appellees.
 Before BAUER, Chief Judge, and CUMMINGS and EASTERBROOK, Circuit Judges.
 CUMMINGS, Circuit Judge.
 
 
 1
 The plaintiff was a Chicago firefighter until 1985 when the City terminated his employment after he suffered a loss of consciousness on the job. He subsequently brought suit in federal court alleging that his termination was in violation of Sec. 504 of the Rehabilitation Act of 1973, 29 U.S.C. Sec. 794, and the nondiscrimination provisions of the State and Local Fiscal Assistance Act, 31 U.S.C. Sec. 6716. The district court dismissed the plaintiff's complaint because the alleged discrimination was not related to a program or activity receiving federal financial assistance. 640 F.Supp. 1088. The plaintiff appeals this decision but challenges only whether the district court properly dismissed his claims under Sec. 504 of the Rehabilitation Act.
 
 
 2
 Section 504, 29 U.S.C. Sec. 794, provides in part:
 
 
 3
 No otherwise qualified handicapped individual in the United States ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....
 
 
 4
 Section 504 is by its terms program-specific. It proscribes discrimination only with respect to "programs" or "activities" receiving federal financial assistance. United States Department of Transportation v. Paralyzed Veterans of America, --- U.S. ----, 106 S.Ct. 2705, 2710-2711, 91 L.Ed.2d 494; Consolidated Rail Corp. v. Darrone, 465 U.S. 624, 635-636, 104 S.Ct. 1248, 1255, 79 L.Ed.2d 568. The district court carefully analyzed the types of federal funds received by the City of Chicago and the Chicago Fire Department and concluded that neither entity could be characterized as a "program or activity" for purposes of Sec. 504, and that the plaintiff's employment had no connection with any of the more narrowly defined programs or activities receiving federal financial assistance.
 
 
 5
 We can add little to Judge Moran's excellent opinion and therefore adopt it as our own. We write separately only to comment on the treatment of non-earmarked federal grants under the Rehabilitation Act. The Supreme Court by its own admission has provided little guidance as to the proper definition of a "program or activity receiving federal financial assistance," Darrone, 465 U.S. at 635-636, 104 S.Ct. at 1255, other than to suggest that the relevant program or activity is determined by reference to the grant statute, Paralyzed Veterans, 106 S.Ct. at 2714. If Congress or an agency has earmarked federal funds for a particular purpose or a specific use, the appropriate program or activity will generally be the one delineated by Congress in the grant statute and its legislative history, or by the agency in the terms of its grant. See Grove City College v. Bell, 465 U.S. 555, 570-574, 104 S.Ct. 1211, 1219-1221, 79 L.Ed.2d 516; Darrone, 465 U.S. at 636, 104 S.Ct. at 1235; O'Connor v. Peru State College, 781 F.2d 632, 641-642 (8th Cir.1986). When federal funds are nonearmarked, defining the relevant program or activity becomes a considerably more difficult task. The district court suggested that when funds are non-earmarked and their use is left to the recipient's discretion, the program or activity should be defined not only by the nature of the federal grant, but also in part by the recipient's use of those funds.
 
 
 6
 This result is legislated in the instant case by the nondiscrimination provisions of the State and Local Fiscal Assistance Act, found in 31 U.S.C. Sec. 6716. When general revenue-sharing funds are at issue, Sec. 6716 limits the operation of the Rehabilitation Act. The relevant portions of Sec. 6716 provide:
 
 
 7
 (b) The following prohibitions and exemptions also apply to a program or activity of a State government or unit of general local government if the government receives a payment under this chapter:
 
 
 8
 * * *
 
 
 9
 * * *
 
 
 10
 (2) a prohibition against discrimination against an otherwise qualified handicapped individual under section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794).
 
 
 11
 * * *
 
 
 12
 * * *
 
 
 13
 (c)(1) Subsections (a) and (b) of this section do not apply when the government shows, by clear and convincing evidence, that a payment received under this chapter is not used to pay for any part of the program or activity with respect to which the allegation of discrimination is made.
 
 
 14
 The legislative history of Sec. 6716(c)(1) indicates that Congress intended Sec. 504's prohibition against discrimination to apply generally to all of the programs and activities of a government receiving general revenue-sharing funds. H.R.Conf.Rep. No. 94-1720, 94th Cong., 2d Sess. 32, reprinted in 1976 U.S.Code Cong. & Admin.News 5151, 5188, 5200. However, Congress also intended that "if the recipient government demonstrates by clear and convincing evidence that the challenged program or activity is not directly funded with revenue sharing funds, then that program or activity does not violate the nondiscrimination provision." Id. In this case the parties stipulated that the City never allocated revenue-sharing funds to the Chicago Fire Department. Thus the Department cannot be considered a "program or activity" subject to Sec. 504 by virtue of the City's receipt of general revenue-sharing funds.
 
 
 15
 It is far from clear, however, that the same result would obtain if the City received some other kind of non-earmarked grant from the federal government. Section 504 itself does not contain a provision similar to Sec. 6716(c)(1), nor does its legislative history suggest that Congress intended to permit recipients of non-earmarked funds to avoid the prohibition of Sec. 504 by channeling such funds into programs or activities where discrimination does not exist and designating their own freed-up funds for use in programs or activities where discrimination may exist. By focusing, as the Supreme Court has instructed, on the grantor's intention and purpose as reflected in the grant statute or by the terms of an agency grant, one might well conclude with respect to a non-earmarked grant that the recipient itself is the relevant "program" for purposes of Sec. 504. Such a conclusion would in turn subject all of the recipient's programs and activities to the requirements of Sec. 504 regardless of how the recipient actually chose to allocate the unrestricted funds.
 
 
 16
 The Supreme Court has never directly addressed the program-specific requirement in the context of a non-earmarked grant, and its statements in dicta have been conflicting. In Grove City, the Court suggested that if an educational institution were to receive unrestricted federal grants which it could use for whatever purpose it desired, then the entire school might be subject to the non-discrimination requirement of Title IX.[1] 465 U.S. at 572-574, 104 S.Ct. at 1220-1221; see also Tudyman v. United Airlines, 608 F.Supp. 739, 743 (C.D.Cal.1984) (noting that the Court in Grove City did not reject the possibility that federal aid could in some situations result in Sec. 504 covering the entire institution). In the earlier case of North Haven Board of Education v. Bell, 456 U.S. 512, 540, 102 S.Ct. 1912, 1927, 72 L.Ed.2d 299, however, the Court, without defining the relevant program at issue, suggested that the defendant school board might be able to avoid the prohibition of Title IX if it could show that "the complaining employees' salaries were not funded by federal money, that the employees did not work in an education program that received federal assistance, or that the discrimination they actually suffered did not affect a federally funded program."[2]
 
 
 17
 Because the only non-earmarked funds involved in the present case are general revenue-sharing funds, we need not determine the scope of the relevant "program or activity" in a Rehabilitation Act suit involving unrestricted financial assistance. But we do question the district court's conclusion, outside of the context of revenue-sharing funds, that the recipient's use of non-earmarked funds, rather than the grantor's intention and purpose, largely defines the program or activity for purposes of Sec. 504. When the federal government furnishes non-earmarked aid to an institution, Sec. 504 may require that the entire institution be treated as the "program," thereby rendering all of its programs and activities subject to Sec. 504 regardless of how the institution actually allocates the funds.
 
 
 18
 With this one reservation, we fully adopt the district court's opinion which is set out in 640 F.Supp. 1088. The decision of the district court is affirmed.
 
 
 
 [1]
 Grove City involved Title IX of the Education Amendments of 1972, 20 U.S.C. Sec. 1681 et seq., which prohibits discrimination on the basis of sex in any education program or activity receiving federal financial assistance. Because the program-specific language of Title IX, id. Sec. 1681(a), is identical to that of Sec. 504 of the Rehabilitation Act, the Supreme Court has consistently relied on case law developed under Title IX in interpreting Sec. 504. See Paralyzed Veterans, 106 S.Ct. at 2711-2712; Darrone, 465 U.S. at 635-636, 104 S.Ct. at 1255
 
 
 [2]
 Few lower courts have analyzed the treatment of non-earmarked funds under Sec. 504. In Arline v. School Board of Nassau County, 772 F.2d 759, 763 (11th Cir.1985), affirmed on other grounds, --- U.S. ----, 107 S.Ct. 1123, 94 L.Ed.2d 307, the Eleventh Circuit held that when a school board deposited non-earmarked federal funds into its own general revenue fund, all activities paid for out of that fund became subject to Sec. 504. The court, however, did not indicate whether a change in that result would be required if the funds were instead placed in a segregated fund and used solely for a specific purpose unrelated to the plaintiff's employment. In Henning v. Village of Mayfield, 610 F.Supp. 17 (N.D.Ohio 1985), a disabled police dispatcher brought a Rehabilitation Act suit against a municipality receiving general revenue-sharing funds. The court determined that the relevant program or activity for purposes of Sec. 504 was the entire Village of Mayfield, and not merely those programs or activities to which the unrestricted funds were actually allocated. This holding is questionable in that the court never mentioned the non-discrimination provisions of the State and Local Fiscal Assistance Act, 31 U.S.C. Sec. 6716 and specifically subsection (c)(1). However, it is unlikely that application of Sec. 6716(c)(1) would have altered the end result because the police department which employed the plaintiff had actually received a portion of the revenue-sharing funds directed to the village