James P. CONLON and Regina M. Conlon, Plaintiffs,

v.

The CITY OF LONG BEACH, Edwin L. Eaton, Individually and as City Manager of the City of Long Beach, the City Council of the City of Long Beach, and Harvey Weisenberg, Roy Tepper, Bruce Bergman, Frances Smith, Frances Hodson, Individually and as Members of the City Council of the City of Long Beach, Defendants.

No. CV 83–528 (ERK).

United States District Court, E.D. New York.

Dec. 23, 1987.

Pascarella Dehler Illmensee & Carra, Garden City, N.Y., for plaintiffs.

Carney & Wilson, New York City, for defendants.

KORMAN, District Judge.

In this action for damages under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1982), and 42 U.S.C. § 1983 (1982), as well as several New York statutes, plaintiffs James and Regina Conlon seek to recover for injuries suffered by Mr. Conlon, a part-time employee of the City of Long Beach, when a stall partition in a City Hall rest room collapsed on him while he was attempting to use the commode. Mr. Conlon, who relies on a wheelchair for mobility, and his wife allege that the defendants' failure to equip the City Hall lavatories so as to facilitate access by the handicapped violated federal and state law and caused the plaintiffs' injuries. The parties have moved and cross-moved for summary judgment. In addition, the defendants have made several arguments that will be treated here as cross-motions, in the alternative, for partial summary judgment. For the reasons detailed below, all motions are denied.

Defendant City of Long Beach hired plaintiff James Conlon in January 1978 to work at City Hall several mornings a week for several hours a day in the newly created position of ombudsman, in which he investigated complaints from the public.[1] At the time he was hired, Mr. Conlon was partly paralyzed from the chest down and dependent on a wheelchair and, as defendants concede, a "handicapped individual," as defined by the Rehabilitation Act, 29 U.S.C. § 706(7)(B) (1982).[2]

---

1. Some question exists as to the exact hours Mr. Conlon worked. Mr. Conlon states that his job was "five days a week, Monday through Friday, from the hours of 8:30 A.M. until 1:00 P.M." Affidavit in Support of Plaintiffs' Motion for Summary Judgment at 2. One of the defendants, Long Beach City Manager Edwin L. Eaton,

described the job as requiring "three to five hours daily, four or five days per week," with the exact hours being "entirely flexible." Affidavit of Edwin L. Eaton at 2, 4.

2. Since the time this action was filed, Congress has amended the Rehabilitation Act to change the phrase "handicapped individual" to "individ-

According to the plaintiffs, immediately upon assuming his new position, Mr. Conlon began to complain that the rest rooms in City Hall were inaccessible to the handicapped. Defendants dispute this account, but in any case it is clear that on March 5, 1981, Mr. Conlon sent a memorandum to the members of the City Council and to the City Manager, Edwin L. Eaton—all of whom are defendants in this action—in which he stated that, because the entrances to the toilet stalls were not wide enough for a wheelchair, the City was denying the handicapped the use of the City Hall bathrooms. He further claimed that since the City received federal aid, it was in violation of § 504 of the Rehabilitation Act, which provides that "[n]o otherwise qualified handicapped individual ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794. Mr. Conlon requested that the City reconstruct two of the building's rest rooms to make them accessible to the disabled.

Eight months after circulating the memorandum, on November 12, 1981, Mr. Conlon was injured in an accident in the sixth-floor lavatory at City Hall. In maneuvering himself from his wheelchair onto the commode, Mr. Conlon used the metal partitions of the stall to brace himself. As he was doing so, however, one of the partitions fell and pinned Mr. Conlon to the floor. The plaintiffs allege in their complaint that the partition had not been "properly secured to the floor." Complaint at 7. As a result of this incident, Mr. Conlon claims, he has suffered numerous injuries, including increased muscle spasms, sleeping difficulty, leg pains and emotional distress, and has required medical treatment; Mrs. Conlon alleges a loss of her spouse's services and consortium. Since the accident, Mr. Conlon has not returned to work.

On February 10, 1983, plaintiffs filed this complaint against the City of Long Beach, the City Council, the City Manager, and the individual members of the City Council, in both their personal and official capacities. The complaint alleged violations of § 504 of the Rehabilitation Act and 42 U.S.C. § 1983, and of three New York statutes— Executive Law § 296(1) (McKinney 1982), which prohibits employment discrimination against the disabled; Public Buildings Law § 51 (McKinney 1946 & Supp.1987), which mandates that the "reconstruction, rehabilitation, alteration or improvement" of public buildings conform to the rules of the state building construction code regarding facilities for the physically handicapped; and Public Officers Law § 103(b) (McKinney 1952 & Supp.1987), which requires "reasonable efforts" to insure that public meetings are held in facilities accessible to the handicapped.

To buttress the § 504 claim, plaintiffs noted that the City at the time received federal funds in the form of both grants and general revenue sharing. Plaintiffs' Statement Pursuant to Civil Rule 3(g) ("Pl. 3(g)") at 4. Defendants agree, but argue that revenue sharing funds were used only for police and fire salaries and street maintenance. Defendants' Statement Pursuant to Civil Rule 3(g) ("Def. 3(g)") at 3. Plaintiffs assert that the City paid Mr. Conlon from the general revenue fund into which federal revenue sharing money was deposited.

## I

■ Plaintiffs' principal claim arises under § 504, which states that "[n]o otherwise qualified handicapped individual ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794. In the usual case where plaintiff alleges he was denied employment, or actually or constructively terminated, a plaintiff must show: (1) that he is a "handicapped person" under the

ual with handicaps." Rehabilitation Act Amendments of 1986, Pub.L. No. 99–506, 100 Stat. 1810, 1844.

Act; (2) that he is "otherwise qualified" for his position; (3) that he is being excluded from the position solely by reason of his handicap; and (4) that the position exists as part of a program or activity receiving federal financial assistance. *Doe v. New York University,* 666 F.2d 761, 774, 776 (2d Cir.1981). Although plaintiffs concededly meet the first two elements that must be shown to establish a *prima facie* case, for present purposes it is necessary to refine somewhat the third element, and discuss in some detail the fourth element, of the test established in *Doe.*

### A

■ The third element of the *prima facie* case there outlined asks whether the plaintiff was *excluded* from the position solely by reason of his handicap. That formulation made sense in the context of *Doe,* where the plaintiff was seeking readmission to the medical school that had expelled her. Here, where plaintiffs are alleging that the failure to provide rest rooms accessible to the handicapped constituted discrimination in the "terms, conditions, and privileges of employment," the proper inquiry centers on whether, by reason of his handicap, he was "subjected to discrimination." This language is consistent with the wording of the statute itself, from which the remainder of the *prima facie* case set forth in *Doe* is doubtless directly drawn. It also better reflects the understanding of the statute expressed in the implementing regulations, which set forth "general prohibitions against discrimination" and "general prohibitions against employment discrimination," including a prohibition against discrimination in "any ... term, condition, or privilege of employment." *See* 28 C.F.R. §§ 41.51, 41.52 (1986).

The discrimination alleged by the plaintiffs here consists not of overt hostility or an outright double standard, but of a failure to make "reasonable accommodation" to the special needs of the disabled. In *Southeastern Community College v. Davis,* the Supreme Court first recognized that "a refusal to accommodate the needs of a disabled person," if "unreasonable," might "amount[ ] to discrimination against the handicapped." 442 U.S. 397, 413, 99 S.Ct. 2361, 2370, 60 L.Ed.2d 980 (1979). Department of Justice regulations similarly require that "a recipient [of federal financial assistance] shall make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped applicant or employee unless the recipient can demonstrate that the accommodation would impose an undue hardship on the operation of its program." [3] 28 C.F.R. § 41.53 (1986).

Plaintiffs argue that those regulations, in conjunction with § 504, "imposed an absolute duty on the defendants to make at least one facility accessible" to Mr. Conlon. Plaintiffs' Memorandum of Law in Support of Their Motion for Summary Judgment ("Pl. Memo.") at 10–11. While plaintiffs never make explicit what an "absolute duty" entails, they suggest that the defendants have a greater obligation toward a current employee whose disability was known to the employer at the time he was hired than they would toward a mere job applicant. *Id.* at 7. For this assertion

**3.** While each federal agency or department issues separate regulations under § 504 that are applicable only to the recipients of its own grants, the Department of Justice retains responsibility for coordinating the implementation of § 504 and has issued guideline regulations with which all other regulations must be consistent. 28 C.F.R. § 41.1, 41.4(a) (1986). To the extent that the City of Long Beach may be deemed a recipient of federal financial assistance, *see* I.B., *infra,* it is subject to Department of Justice regulations. In addition, as a recipient of federal revenue sharing funds, the City of Long Beach is subject to the anti-discrimination regulations issued by the Department of the Treasury under the State and Local Fiscal Assistance Act, 31 U.S.C. §§ 6701–6724 (1982), which are expressly intended to supplement rather than supplant those issued by the Department of Justice. 31 C.F.R. § 51.50 (1987). Plaintiffs, however, brought this action under § 504, not under the State and Local Fiscal Assistance Act. Accordingly, to the extent that this opinion relies on the regulations, it relies on those issued by the Department of Justice. To bring this action under the State and Local Fiscal Assistance Act, the plaintiffs would have had to exhaust their administrative remedies. 31 U.S.C. § 6721(a).

plaintiffs offer no authority. Indeed, the regulations expressly pertain to "applicants or employees" without drawing a distinction between them. *See, e.g.,* 28 U.S.C. §§ 41.52(b), 41.53 (1986). Moreover, the law is clear that the burden on employers is not "absolute" in the sense that where the accommodation sought by the employee is not "reasonable," or where the employer can demonstrate "undue hardship," no accommodation is legally required.

■ Still, an employer must take some steps to accommodate disabled employees. The question here, as in *Dopico v. Goldschmidt,* 687 F.2d 644 (2d Cir.1982), is "how much accommodation is called for" by § 504 and its regulations. *Id.* at 653. In *Dopico,* the plaintiffs brought a class action to force various governmental agencies to make New York's mass transit system more accessible to the handicapped. *Dopico* involved a different set of regulations from those at issue in this case.[4] But the holding of *Dopico*—that "section 504 of the Rehabilitation Act requires some degree of positive effort to expand the availability of federally funded programs to handicapped persons otherwise qualified to benefit from them"—fully applies here. *Id.* at 653 n. 6. How much effort is required, however, depends more on practical considerations than on questions of entitlement. *Id.* at 653.

One prominent practical consideration, of course, is cost. In this case, the cost of retooling the lavatories to facilitate handicapped access, estimated by plaintiffs at $500–$700, Pl. 3(g) at 6, and by defendants at $25,000, Def. 3(g) at 4–5, surely does not constitute the sort of "massive expenditure" that *Davis* and *Dopico* have said § 504 does not require. *Davis,* 442 U.S. at 409–413, 99 S.Ct. at 2368–70; *Dopico,* 687 F.2d at 653.

But another important practical consideration is the nature and extent of the problem. And on this point, not enough information is available. For three years, almost four, James Conlon worked at City Hall, and presumably used its lavatories, without incident. Although Mr. Conlon complained about the rest rooms to the City Manager at least once, in writing, his own deposition testimony confirms that he used them, at least on occasion. Affidavit of Edwin L. Eaton, Exhibit A at 13. Evidently, then, the bathrooms were not completely inaccessible to the handicapped. On the other hand, plaintiffs' counsel suggested at oral argument, albeit without support from any affidavit, that Mr. Conlon used the City Hall lavatories, which he regarded as unsafe, only in emergencies. In short, it remains a matter of dispute whether the lavatories as they existed at the time of Mr. Conlon's accident were inconvenient and, more significantly, whether they were unsafe for the disabled.

■ The latter issue—with respect to safety—is perhaps the most serious question of material fact because of the nature of the injury for which plaintiffs seek compensation. Plaintiffs do not claim that Mr. Conlon was forced to leave his job because the bathrooms were inaccessible nor do they seek damages because of the humiliation Mr. Conlon suffered in using an ill-equipped facility. Plaintiffs seek damages for personal injuries suffered when the stall partition in the bathroom gave way when Mr. Conlon used it to brace himself. Before plaintiffs can recover for those injuries they must show that the bathroom facility was not simply inconvenient for handicapped persons but that it was unsafe for use by them and that defendants knew or should have known of this condition.[5]

---

**4.** In *Dopico,* the Court of Appeals relied on the "special efforts" regulations of 49 C.F.R. Parts 609 and 613 (1980), which apply only to mass transportation.

**5.** While a plaintiff need not establish that an employer's conduct is fueled by a discriminatory intent, the Supreme Court has observed that there is reason to question whether § 504 requires employers "to evaluate the effect on the

handicapped of every proposed action that might touch the interests of the handicapped, and then to consider alternatives for achieving the same objectives with less severe disadvantage to the handicapped." *Alexander v. Choate,* 469 U.S. 287, 298, 105 S.Ct. 712, 719, 83 L.Ed.2d 661 (1985). Similarly, in the present context, there is reason to question whether § 504 should be read to impose on an employer who hires a handicapped person absolute liability for

These issues remain in controversy. *Compare* Affidavit in Support of Plaintiffs' Motion for Summary Judgment ("Pl. Aff.") at 3 ("the hazardous conditions ... as to handicapped visitors and employees") *with* Affidavit of Edwin L. Eaton at 3–4 ("I did not then, and do not now, beleive [sic] that the absence of handicapped equipped lavatories represented either an 'unlawful' or 'unsafe' condition.") Summary judgment is therefore unavailable for either party.[6]

■ One additional point deserves emphasis in this regard. The complaint specifically alleges that the partition in the bathroom stall where Mr. Conlon was injured "was not properly secured to the floor" when it collapsed on him. Complaint at 7. If this allegation is true, then Mr. Conlon's injuries may very well not be attributable at all to the alleged violation of § 504—i.e., the failure to equip the City Hall bathrooms so as to make them safe for use by the handicapped—but to the City's presumable negligence in failing to keep an otherwise safe facility in good repair. If this be the case, then the plaintiffs may have no basis for recovery under § 504.

injuries suffered as a result of unsafe conditions of which he has no notice and that do not pose an obvious safety hazard for handicapped employees. Indeed, both the Department of Justice regulations and the case law require that employers accommodate the known needs of disabled employees only to the extent that such accommodation is reasonable. 28 C.F.R. § 41.53; *Davis*, 442 U.S. at 412–13, 99 S.Ct. at 2370. Where a defendant does not know or have reason to know of any hazard, there can be no failure to "accommodate," and it would be unreasonable to impose liability.

6. Defendants advance two additional arguments, both unavailing, in support of their cross-motion for summary judgment under § 504. They argue that they did not violate the Act because they created Mr. Conlon's job as ombudsman specifically for him and because § 504 pertains to "access to, not convenience of, employment." The City's commendable willingness to hire the disabled, however, does not excuse it from full compliance with the Act, including the obligation to make reasonable accommodation to their physical needs on the job. Moreover, the defendants' contention that § 504 was not intended to eliminate the inconvenience encountered by the handicapped rests on a complete misreading of the case they cite. *See*

## B

Strictly speaking, the conclusion that genuine issues of material fact remain in dispute makes it unnecessary to proceed to the fourth element of the prima facie case. Nevertheless, it may be helpful to examine this issue in order to clarify what needs to be resolved at trial.

■ Under the prima facie standard established in *Doe*, and under § 504 itself, plaintiffs must show that the position in question existed as part of a program or activity receiving federal financial assistance. *Doe*, 666 F.2d at 774; *see also Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 635–36, 104 S.Ct. 1248, 1255–56, 79 L.Ed.2d 568 (1984). Here, the plaintiffs claim that the City paid Mr. Conlon from its general revenue fund, into which federal revenue sharing moneys were deposited.[7]

■ The defendants make essentially two responses. First, while they admit that federal revenue sharing funds "were deposited in the general fund of the City of Long Beach," Def. 3(g) at 3, they argue

*Prewitt v. United States Postal Serv.*, 662 F.2d 292 (5th Cir.1981).

Apparently relying on *Prewitt*, the defendants contend that § 504 was designed to help the handicapped overcome only "insurmountable physical barriers." By this they seem to mean that the handicapped must cope with "surmountable" obstacles by themselves, without special accommodation by their employers, even at the cost of some personal inconvenience. But the defendants badly misread *Prewitt*. *Prewitt* says that § 504 does *not*, after *Davis*, prohibit "'insurmountable barrier' handicap discrimination" precisely because insurmountable barriers, by definition, cannot be overcome without fundamental changes in the nature of the job. On the other hand, § 504 does require that employers reasonably accommodate the handicapped so as to help them overcome "surmountable" barriers. *Prewitt*, 662 F.2d at 305–08.

7. The City also received grants from the Department of Housing and Urban Development, the Department of the Interior and the Urban Mass Transportation Administration, but according to the unchallenged representations of the defendants, these grants were earmarked for specific purposes. No claim is made that Mr. Conlon was employed in any of these programs.

that these funds were used solely for police and fire salaries and street maintenance. At trial the defendants will need to establish this defense by clear and convincing evidence. Under the State and Local Fiscal Assistance Act, the nondiscrimination provisions of § 504 apply to state and local governments receiving federal revenue sharing unless the government in question "demonstrates, by clear and convincing evidence, that the program or activity with respect to which the allegation of discrimination has been made is not funded in whole or in part with funds made available under" the revenue sharing program. State and Local Fiscal Assistance Amendments of 1976, Pub.L. No. 94–488, § 8(a), 90 Stat. 2341, 2350–51 (current version at 31 U.S.C. § 6716(c)(1) (1982 & Supp. III 1985)).[8]

Second, defendants argue that Mr. Conlon was employed by City Hall and that "City Hall and its associated internal administrative affairs" do not "constitute a 'program or activity' within the meaning of § 504." Defendants' Memorandum of Law in Support of Their Cross–Motion for Summary Judgment ("Def. Memo.") at 20. Although the defendants do not explain why this is so, it appears this argument is an effort to bring this case within the ambit of the holdings of the Supreme Court in *Grove City College v. Bell,* 465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984) and *North Haven Bd. of Educ. v. Bell,* 456 U.S. 512, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982). But those cases are inapposite.

Both *Grove City* and *North Haven* said that regulations under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) (1982), reach only those programs that actually receive federal funds, not the larger institutions of which they are a part. *Grove City,* 465 U.S. at 570–74, 104 S.Ct. at 1220–21; *North Haven,* 456 U.S. at 535–37, 102 S.Ct. at 1925–26. In short, the Department of Education could not "attribute the receipts of the part to the whole." *Frazier v. Bd. of Trustees,* 765 F.2d 1278, 1290 n. 29 (5th Cir.1985). Here, "attribution flows in the opposite direction." *Id.* The defendants apparently wish to deny that the funds received by the City as a whole may be attributed to the administrative operation of the City of Long Beach in which Mr. Conlon was employed. Neither *Grove City* nor *North Haven* supports their contention. Indeed, the case law on this issue points to an opposite result. *Id.; Arline v. School Bd.,* 772 F.2d 759, 763 (11th Cir. 1985), *aff'd on other grounds,* —— U.S. ——, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987).

## II

In addition to asking for summary judgment on the central issue of discrimination under § 504, the defendants make several arguments that will be construed here as an independent ground in support of the cross-motion for summary judgment and three cross-motions, in the alternative, for partial summary judgment.

## A

 The defendants ask for summary judgment on the ground that the plaintiffs have an adequate remedy at state law. They argue that New York's Workers' Compensation Law gives Mr. Conlon and his family their sole and exclusive remedy for any accident occurring at Mr. Conlon's place of work, including the accident lying at the heart of the present litigation. N.Y.

---

8. At oral argument, plaintiffs' counsel relied heavily on *Henning v. Village of Mayfield Village,* 610 F.Supp. 17 (N.D.Ohio 1985), which it regarded as directly on point, for its contention that the City of Long Beach qualified as the recipient of federal financial assistance under the Rehabilitation Act. In *Henning,* a disabled police dispatcher brought suit under § 504 against a municipality receiving general revenue sharing funds, and the court held that the relevant "program or activity" for § 504 purposes was the entire Village government, not just those specific programs to which federal funds were actually allocated. The opinion in *Henning,* however, has been criticized, quite soundly, for ignoring 31 U.S.C. § 6716(c)(1). *See Foss v. City of Chicago,* 817 F.2d 34, 36 n. 2 (7th Cir.1987). In addition, as the *Foss* court pointed out, the police department that employed the plaintiff in *Henning* actually received a portion of Mayfield Village's revenue sharing funds anyway, and so would have been subject to the § 504 regulations even if the municipality were not itself deemed a recipient of federal financial assistance. *Id.*

Work.Comp. Law § 11 (McKinney 1965 & Supp.1987). Although plaintiffs devote much effort to their contention that the defendants committed an intentional tort not covered by § 11, their brief second argument is the decisive one. State exclusivity provisions may not bar a federal civil rights action. *McClary v. O'Hare*, 786 F.2d 83, 85 (2d Cir.1986). If the plaintiffs have a valid claim under § 504 and § 1983, then the defendants' wrongful conduct cannot be immunized by state law. *Martinez v. California*, 444 U.S. 277, 284 n. 8, 100 S.Ct. 553, 558 n. 8, 62 L.Ed.2d 481 (1980). Any other interpretation of § 1983 "would transmute a basic guarantee into an illusory promise." *Id.* New York's exclusivity provision, therefore, does not compel summary judgment for the defendants in the instant action.

### B

In addition to § 504 of the Rehabilitation Act, the plaintiffs bring this action under 42 U.S.C. § 1983.[9] In support of their cross-motion, the defendants argue that no § 1983 action will lie in this case because the plaintiffs have not suffered any deprivation of a federally protected right, and even if they have, that right was created as part of a comprehensive statutory scheme that provides its own exclusive remedy.

■■■ It is well settled that § 1983 does not create any new substantive rights. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617–18, 99 S.Ct. 1905, 1915–16, 60 L.Ed.2d 508 (1979). In order to maintain a cause of action under § 1983, therefore, a plaintiff must establish a violation of a federally protected right independent of § 1983. The Conlons here allege that the defendants' actions deprived them of their constitutional rights to due process and to the equal protection of the laws and of their statutory rights under § 504. U.S. Const. amend. XIV, § 1; 29 U.S.C. § 794.

No support is offered for the constitutional claims, however, other than to say that they are "inextricably relevant" to the allegations under § 504. Pl. Memo. at 17. At this point, the record contains only the conclusory assertion found in the complaint, and this, of course, is too slender a reed to support a § 1983 action. *See* Complaint at 10.

If the plaintiffs have a § 1983 claim, then, it rests on the violation of § 504. Where, as here, the plaintiffs' § 504 claim survives the defendants' cross-motion for summary judgment, *see* I.A., *supra*, it also provides a sufficient basis to reject the defendants' argument that no § 1983 action is available because no statutory violation occurred. The only question here is whether, as defendants contend, § 504 provides its own comprehensive remedy that forecloses resort to § 1983.

■■■ A § 1983 action will not lie where the "governing statute provides an exclusive remedy for violations of its terms." *Pennhurst State School and Hosp. v. Halderman*, 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981) (quoting *Maine v. Thiboutot*, 448 U.S. 1, 22 n. 11, 100 S.Ct. 2502, 2514 n. 11, 65 L.Ed.2d 555 (1980) (Powell, J., dissenting)). Similarly, if the remedial devices provided in a particular piece of legislation are "sufficiently comprehensive," they may "demonstrate congressional intent to preclude the remedy of suits under § 1983." *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 20, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981). In a 1978 amendment to the Rehabilitation Act, Congress provided that the "remedies, procedures and rights set forth in title VI of the Civil Rights Act of 1964 [§ 2000d–§ 2000d–6] shall be available to any person aggrieved by any act or failure to act" in violation of § 504. Rehabilitation, Comprehensive Services, and Develop-

---

9. In pertinent part, § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the dep-

rivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.

mental Disabilities Amendments of 1978, Pub.L. No. 95–602, § 120, 92 Stat. 2955, 2982 (codified at 29 U.S.C. § 794a(a)(2) (1982)). According to the defendants, this amendment "expressly provides for 'sufficiently comprehensive' remedies." Def. Memo. at 8. In fact, all it does is apply the remedies available under Title VI, which prohibits recipients of federal aid from discriminating on the grounds of race, color or national origin, to § 504. By its nature, this amendment offers remedies that are no more comprehensive than those available under Title VI.

While the Supreme Court has not directly addressed the question, five justices of the Supreme Court have noted that Title VI claimants may also pursue § 1983 relief.[10] *Guardians Ass'n v. Civil Service Comm'n of New York*, 463 U.S. 582, 628 & n. 20, 103 S.Ct. 3221, 3246 & n. 20, 77 L.Ed.2d 866 (1983) (Marshall, J., dissenting);[11] *Guardians*, 463 U.S. at 638, 103 S.Ct. at 3251 (Stevens, J., joined by Brennan and Blackmun, JJ., dissenting); *Cannon v. University of Chicago*, 441 U.S. 677, 722–24, 99 S.Ct. 1946, 1970–72, 60 L.Ed.2d 560 (1979) (White, J., joined by Blackmun, J., dissenting). *Contra Guardians*, 463 U.S. at 610 n. 3, 103 S.Ct. at 3236–37 n. 3 (Powell, J., joined by Burger, C.J., concurring in the judgment); *Alexander v. Chicago Park Dist.*, 773 F.2d 850, 856 (7th Cir.1985). There does not appear to be any reason to reach a different result here.

The defendants further suggest that the Supreme Court's supposedly expansive view of the remedies available under § 504 in *Guardians Ass'n v. Civil Service Comm'n of New York*, 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983) and *Con-*

*solidated Rail Corp. v. Darrone*, 465 U.S. 624, 104 S.Ct. 1248, 79 L.Ed.2d 568 (1984) indicates that "resort to § 1983 is unnecessary and unwarranted." Def. Memo. at 9. This shot falls well wide of the mark. A majority of the splintered *Guardians* court agreed, in dicta, that a private plaintiff could recover back pay under Title VI. *See Consolidated Rail*, 465 U.S. at 630 n. 9, 104 S.Ct. at 1252 n. 9. The *Consolidated Rail* Court held that § 504's ban on employment discrimination by federal aid recipients did not attach only to federal aid the primary purpose of which was to provide employment. *Id.* at 632–35, 104 S.Ct. at 1253–55. But these judicial efforts to illuminate the contours of the statutory remedies available under Title VI and § 504 are not so comprehensive as to "[leave] no room for additional private remedies under § 1983." *Wright v. Roanoke Redevelopment and Hous. Auth.*, — U.S. —, 107 S.Ct. 766, 771, 93 L.Ed.2d 781 (1987).

Moreover, the standard is not merely whether adequate alternatives to § 1983 are available, as the defendants imply. Rather, the test is whether the alternative remedies are "sufficiently comprehensive ... to demonstrate congressional intent" to bar § 1983 actions. *Middlesex*, 453 U.S. at 20, 101 S.Ct. at 2626. The opinions cited by the defendants shed only a shadowy light on the touchstone issue of legislative intent. To prevail on this point, the defendants would need to "demonstrate[ ] by express provision or other specific evidence from the statute itself that Congress intended to foreclose such private enforcement." *Wright*, 107 S.Ct. at 771. They have not met that burden here.[12]

---

**10.** Moreover, Title VI provides for compliance to be "effected ... by any other means authorized by law," presumably including § 1983; it is, in short, expressly *non* exclusive. 42 U.S.C. § 2000d–1 (1982). *See also Cannon v. University of Chicago*, 441 U.S. 677, 721–24, 99 S.Ct. 1946, 1970–72, 60 L.Ed.2d 560 (1979) (White, J., joined by Blackmun, J., dissenting); *United States v. Marion County School Dist.*, 625 F.2d 607, 611–13 (5th Cir.1980).

**11.** While Justice Marshall did not explicitly state that § 1983 relief was available for Title VI

violations, he did observe that the administrative remedy provided in Title VI was "clearly not exclusive." *Guardians*, 463 U.S. at 628 n. 20, 103 S.Ct. at 3246 n. 20. In the absence of an exclusive statutory remedy, claimants may sue under § 1983. *Wright v. Roanoke Redevelopment and Hous. Auth.*, — U.S. —, 107 S.Ct. 766, 771, 93 L.Ed.2d 781 (1987).

**12.** The plaintiffs offer as precedent several cases where actions were brought under both § 504 and § 1983. The defendants correctly point out that none of these cases are controlling. Three

### C

■ Relying on *Monell v. Department of Social Services of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) the defendants argue that the City of Long Beach itself, and presumably the City Council (named in this suit as a separate defendant), cannot be held liable in damages. From the start, it should be clear that this argument is valid, if at all, only for the § 1983 claim. The eleventh amendment poses no general bar to suits against municipalities. *Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977). And damages have been held to be available under § 504. *See Smith v. Robinson*, 468 U.S. 992, 1020 n. 24, 104 S.Ct. 3457, 3472 n. 24, 82 L.Ed.2d 746 (1984) (noting, without expressing opinion on matter, that courts usually allow damages under § 504).

■ *Monell* held that a state or local government is responsible under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." 436 U.S. at 694, 98 S.Ct. at 2037–38. After this opinion came a long string of cases that attempted to pin down even more precisely what constituted a "government's policy or custom." *See, e.g., City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Turpin v. Mailet*, 619 F.2d 196 (2d Cir.), *cert. denied*, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980); *Owens v. Haas*, 601 F.2d 1242 (2d Cir.), *cert. denied*, 444

U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979). Eventually, the Court of Appeals for the Second Circuit declared that "a policy or custom may be inferred from acts or omissions of a municipality's supervisory officials serious enough to amount to gross negligence or deliberate indifference to the constitutional rights of the plaintiff." *Villante v. Department of Corrections*, 786 F.2d 516 (2d Cir.1986). Defendants now seize on this standard and contend that the plaintiffs have made no colorable claims of "gross negligence or deliberate indifference." To hold the City liable, say the defendants, would be to breach the rule of *Monell* that municipal liability cannot rest on a theory of *respondeat superior*.

Regardless of whether a claim of "gross negligence or deliberate indifference" has been made, the defendants are misapplying the standard. The *Villante* standard is used to determine whether the actions of subordinate municipal employees are attributable to the negligence or indifference of supervisory officials, and hence the municipality itself. Unlike every one of the cases cited above, however, the present case contains no question concerning municipal responsibility for the actions of subordinates. Assuming *arguendo* that § 504 was violated, and viewing the record in the light most favorable to plaintiffs, the violation occurred because of a deliberate act or omission of the highest policymaking officials in the City of Long Beach—that is, because of City policy. There is no need here to try to infer a policy or custom from a pattern of actions by lower-ranking officials. In short, while *Monell* established the rule

---

of the cases cited never actually addressed the question raised by *Pennhurst* and *Middlesex*— whether the statutory remedies of § 504 are sufficiently comprehensive to foreclose resort to § 1983. *Jose P. v. Ambach*, 669 F.2d 865 (2d Cir.1982); *Swan v. Stoneman*, 635 F.2d 97 (2d Cir.1980); *Doe v. Colautti*, 592 F.2d 704 (3d Cir.1979). The fourth, a district court decision, discussed this question but did not consider the effect of the 1978 amendment that arguably incorporated intact the remedies available under Title VI. *Philipp v. Carey*, 517 F.Supp. 513, 520 (N.D.N.Y.1981). At least two district court judges have determined, however, that nothing in § 504 precludes § 1983 relief. *Shuttleworth v. Broward County*, 639 F.Supp. 654, 659–60 (S.D.Fla.1986); *Christopher N. v. McDaniel*, 569

F.Supp. 291, 296–98 (N.D.Ga.1983). One district court judge that reached a contrary conclusion rested his decision on the fact that, in his view, the remedy available under § 504 was limited to equitable relief. *Ruth Anne M. v. Alvin Indep. School Dist.*, 532 F.Supp. 460, 476 (S.D.Tex. 1982). Courts now generally agree, however, that damages are available under § 504 as well. *See Smith v. Robinson*, 468 U.S. 992, 1020 n. 24, 104 S.Ct. 3457, 3472 n. 24, 82 L.Ed.2d 746 (1984) (noting general availability of damages without expressing opinion on merits); *see also Wilder v. City of New York*, 568 F.Supp. 1132 (E.D.N.Y. 1983); *Doe v. Syracuse School Dist.*, 508 F.Supp. 333 (N.D.N.Y.1981); *Patton v. Dumpson*, 498 F.Supp. 933 (S.D.N.Y.1980).

that municipal liability cannot rest on a theory of *respondeat superior*, the plaintiffs here are not relying on any such theory.

## D

Judgment is also sought in favor of the individual defendants in these proceedings, at least insofar as they have been sued in their personal capacity.[13] The defendants offer two separate grounds for such a judgment.

The first point, that § 1983 does not allow liability to be imposed absent some personal involvement of the defendants, is essentially the same argument the defendants make on behalf of the City itself. It fails for the same reason. Supervisory officials, like municipalities, cannot be held liable on a theory of *respondeat superior*. *McCann v. Coughlin*, 698 F.2d 112, 125 (2d Cir.1983). There must be some showing of personal responsibility. *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986). But here, the individual defendants, like the City of Long Beach, are being sued for what they themselves did or failed to do, not for what subordinates did without their knowledge. Allegedly, these individual defendants deliberately failed to remedy an ongoing violation of § 504 of which they had personal knowledge. Of course, it is possible that the plaintiffs will not be able to demonstrate that what the defendants did violated the law. But if the allegations are proven, the personal involvement requirement of § 1983 poses no bar to liability.

The individual defendants also argue that they are immune from liability under either § 504 or § 1983 because they are government officials. It is true that, generally, public officials performing discretionary functions are entitled to a qualified immunity for actions taken in good faith within the sphere of their official responsibility. *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 102 S.Ct. 2727, 2736–37, 73

L.Ed.2d 396 (1982). A defendant, however, must plead qualified immunity as an affirmative defense. *Id.; see also Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). No such defense has been pleaded here.

## III

Finally, the parties seek summary judgment on the pendent state claims. These issues turn, in the main, on the same questions that will decide the federal claims discussed above. For that reason, these motions, too, must be denied.

The plaintiffs allege that by failing to provide adequate rest room facilities for Mr. Conlon, the City of Long Beach and the other defendants violated New York's Human Rights Law, which provides, in pertinent part, that "It shall be an unlawful discriminatory practice: (a) For an employer ..., because of the ... disability ... of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y.Exec. Law § 296(1) (McKinney 1982). This claim closely resembles the one brought under § 504. The legal standard for determining whether there was discrimination under New York law is similar as well. The Court of Appeals held in *Dopico* that the degree of accommodation required by regulations implementing § 504 "turn[ed] more on considerations of practicality than on matters of entitlement, merit, and restitution." 687 F.2d at 653. Similarly, the New York Court of Appeals ruled that a 1979 amendment introducing a "reasonableness" standard into the state Human Rights Law "shift[ed] the focus from technicalities to practicalities in cases involving claims of job discrimination on the basis of physical disability." *Miller v. Ravitch*, 60 N.Y.2d 527, 533 n. *, 458 N.E.2d 1235, 1237 n. *, 470 N.Y.S.2d 558, 560 n. *, (1983); *see* N.Y.Exec. Law § 292(21)

---

**13.** A suit against a public servant in his official capacity is identical to a suit against the public entity he represents, provided the public entity gets notice and an opportunity to respond.

*Brandon v. Holt,* 469 U.S. 464, 471–72, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985). As a party to this action, the City of Long Beach has had notice of these proceedings.

(McKinney 1982) (amended 1983).[14] The focus on "practicalities" in the state law, as in the federal law, makes it impossible to resolve the discrimination claim on the basis of the affidavits in the record. *See* I.A., *supra.*

The plaintiffs also invoke § 51 of the Public Buildings Law, which requires that "the new construction, reconstruction, rehabilitation, alteration or improvement of all [public buildings] conform to the requirements of the state building construction code relating to facilities for the physically handicapped...." N.Y.Pub.Bldgs. Law § 51 (McKinney 1946 & Supp.1987). But they neglect to cite the state building construction code itself, and it is therefore difficult to ascertain whether the present defendants were in violation. Moreover, it remains unclear whether the modifications made to the City Hall building constitute "reconstruction, rehabilitation, alteration or improvement" within the meaning of the statute. The Public Buildings Law defines "reconstruction, rehabilitation, alteration or improvement" to "mean only that work which results in a substantial change in the structure or facilities of a public building and shall not include minor repairs necessary for ordinary maintenance." N.Y.Pub. Bldgs. Law § 50(6) (McKinney 1946 & Supp.1987). While the plaintiffs point to several alterations in the City Hall facilities over the years, they do not establish that these alterations resulted in a "substantial change" in the building. *See* Pl.Memo. at 12 n. 4. On the other hand, the defendants' submissions do not establish, as a matter of law, that they amount to nothing more than "minor repairs."

The plaintiffs' last point is that the defendants violated the New York Public Officers Law, which requires that public bodies "make or cause to be made all reasonable efforts to ensure that meetings are held in facilities that permit barrier-free physical access to the physically handicapped." N.Y.Pub.Off. Law § 103(b) (McKinney 1952 & Supp.1987). The plaintiffs argue that the Long Beach City Council, as a public body, broke the law by holding its meetings in City Hall. Assuming that Mr. Conlon has standing to bring an action as to this point, this claim presents the same issue that arose under the state and federal discrimination claims. Whether the City Council's efforts were "reasonable" depends on whether the rest rooms were unsafe. At this stage in the proceedings, that information remains incomplete. *See* I.A., *supra.* In addition, neither party offers any evidence as to the "efforts" the City Council may have made in order to hold its public meetings in a location more suited to the needs of the disabled. Summary judgment is not warranted.

## IV

The standard for summary judgment is well established. The moving party must "demonstrate the absence of any material factual issue genuinely in dispute." *American Int'l Group, Inc. v. London Am. Int'l Corp.*, 664 F.2d 348, 351 (2d Cir.1981). In this case, neither the plaintiffs nor the defendants have made the necessary showing. Critical facts remain in dispute as to whether the City Hall rest rooms at the time of the accident were unsafe, whether the defendants' alleged violation of § 504 caused the plaintiffs' injuries and whether the City of Long Beach paid Mr. Conlon as part of a "program or activity" receiving federal financial assistance.

---

**14.** The reasonableness standard is incorporated into the statute's definition of disability, as follows:

The term "disability" means a physical, mental or medical impairment resulting from anatomical, physiological or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques, provided, however, that in all provisions of this article dealing with employment, the term shall be limited to physical, mental or medical conditions which do not prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation sought.

N.Y.Exec. Law § 292(21) (McKinney 1982) (amended 1983). The 1983 amendment is not relevant here.

Accordingly, the motions for summary judgment are denied.