**Kenneth and Karen
ROTHSCHILD, Plaintiffs,**

v.

**Charles GROTTENTHALER, Superintendent of the Ramapo Central School District, and Ramapo Central School District, Defendants.**

**No. 89 Civ. 2992 (GLG).**

United States District Court,
S.D. New York.

July 12, 1989.

National Association of the Deaf Legal Defense Fund, Washington, D.C., Protection and Advocacy Legal Unit, Westchester Independent Living Center, White Plains, N.Y., for plaintiffs; Marc P. Charmatz, Sarah S. Geer, Washington, D.C., Ben Arai, White Plains, N.Y., of counsel.

Coral Ortenberg Mayer Zeck & Prier, P.C., Suffern, N.Y., for defendants; Reuben Ortenberg, of counsel.

## OPINION

GOETTEL, District Judge:

The plaintiffs bring this handicap discrimination action against the defendants alleging that the defendants' refusal to provide a sign language interpreter or other device to aid them in maintaining a meaningful parent-teacher relationship is a violation of section 504 of the Rehabilitation Act and 42 U.S.C. § 1983. The defendants move to dismiss. For the following reasons, that motion is granted in part and denied in part.

## I. *Facts*

The plaintiffs Kenneth and Karen Rothschild are hearing impaired parents of non-hearing impaired children who attend the schools of the defendant Ramapo Central School District in Rockland County, New York (the "district" or "school district"). In September 1981, Kenneth Rothschild made a letter request of the school district that a sign language interpreter be provided, at district expense, to assist Mr. and Mrs. Rothschild in conducting a meaningful parent-teacher relationship, citing section 504 of the Rehabilitation Act of 1973. 29 U.S.C. § 794 (Supp.1989).

In December 1981, the district advised Mr. Rothschild that, on advice of its counsel and counsel to the New York State Department of Education, the plaintiffs were not eligible for the service requested under section 504 of the Rehabilitation Act or the regulations promulgated thereunder. Specifically, the district contended that the plaintiffs did not meet the definition of a "qualified handicapped person" under 34 C.F.R. 104.3(k)(2) (1986).[1] In September 1982, Mr. Rothschild made an additional request that the district purchase a Telecommunication Device for the Deaf ("TDD")[2] to facilitate communication between deaf parents and district personnel.

In December 1982, the plaintiffs filed a complaint with the United States Department of Education alleging that the district was in violation of section 504 of the Rehabilitation Act. 29 U.S.C. § 794 (Supp.1989).

1. The Department of Education, Office of Civil Rights promulgated regulations to govern the applicability of the Rehabilitation Act of 1973 to recipients of federal financial assistance from the Department of Education. 34 C.F.R. §§ 104.1–104.61 (1986). Section 104.3(k)(2), cited by the defendants in support of their position, defines a qualified handicapped person with respect to public preschool, elementary, secondary or adult educational services. See *infra* n. 4 for the text of the statute.

2. A TDD is a keyboard device that enables a deaf person to have a typed conversation with anyone using a similarly equipped telephone. We are advised that a publicly-funded state-wide relay service is now available so that persons who do not have TDDs may communicate directly with persons who use TDDs by transmitting telephone conversations through a third party. Consequently, the plaintiffs' counsel represented at oral argument that that portion of the complaint regarding TDDs has been resolved.

In February 1986, after investigations and several conferences, the United States Department of Education administratively closed the case based on *Grove City College v. Bell*, 465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984)[3] without a determination as to whether or not the defendants discriminated against the Rothschilds.

In March 1987, the Rothschilds appealed the district's denial of sign language interpreter services and a TDD phone to the Commissioner of Education of the State of New York. This appeal was dismissed. In February 1988, the Rothschilds appealed again to the Commissioner of Education. This appeal was also dismissed.

On March 29, 1988, following passage of the Civil Rights Restoration Act of 1987, Pub.L. No. 100–259 (1988), the Rothschild's renewed their request that the district purchase a TDD unit and/or provide interpretive services at district expense. In August 1988, the Rothschilds filed a new administrative complaint with the Office for Civil Rights of the United States Department of Education alleging that the district is in violation of section 504 of the Rehabilitation Act. That matter is still pending.

On May 2, 1989, the plaintiffs commenced this action pursuant to section 504 of the Rehabilitation Act, 29 U.S.C. § 794 and 42 U.S.C. § 1983 seeking injunctive relief and damages. The defendants have moved to dismiss the action for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(2) & (b)(6).

## II. *Subject Matter Jurisdiction*

■ The defendants' first contention is that this court lacks subject matter over the plaintiffs' action because the plaintiffs are not "otherwise qualified" handicapped persons within the meaning of section 504. A prima facie case of discrimination on the basis of handicap under the Rehabilitation Act requires proof that (1) the plaintiff is a handicapped person under the Rehabilitation Act; (2) that the plaintiff is otherwise qualified for the program or activity sought; (3) that the plaintiff has been excluded from a federal program or activity solely by reason of a handicap; and (4) that the program or activity receives federal financial assistance. *Doe v. New York University*, 666 F.2d 761, 774–75 (2d Cir. 1981).

■ The defendants do not dispute that the plaintiffs are handicapped. Nor do they dispute that the Ramapo Central School District is a recipient of federal funds. Rather, they contend that the plaintiffs are not otherwise qualified for the programs and activities offered by the school district. In support of its position, the defendant directs the court to 34 C.F.R. § 104.3(k)(2). That section defines a qualified handicapped person with respect to public elementary schools, secondary schools and adult education.[4] The defendants argue that because the plaintiffs are not of school age, they are not otherwise qualified handicapped individuals.

The defendants' argument conveniently ignores the remaining sections of 34 C.F.R. § 104.3(k). The regulation separately de-

3. In *Grove City College v. Bell*, 465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984), and *Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 104 S.Ct. 1248, 79 L.Ed.2d 568 (1984), the Supreme Court held that the prohibitions of section 504 "apply only to specific programs that received federal financial aid, and not to programs that received no federal financial aid, even if other programs within the same institution received federal financial aid." *Leake v. Long Island Jewish Medical Center*, 869 F.2d 130, 131 (2d Cir.1989) (per curiam). In 1988, however, Congress amended the Rehabilitation Act by passing the Civil Rights Restoration Act of 1987, Pub.L. No. 100–259 (1988). In so doing, Congress overturned the Supreme Court's decisions in *Grove City* and *Darrone*, extending the reach of the

Rehabilitation Act to any program in an institution that receives federal financial aid. *Leake v. Long Island Jewish Medical Center*, 869 F.2d 130, 131 (2d Cir.1989) (per curiam).

4. Section 104.3(k)(2) defines a qualified handicapped person with respect to public elementary and secondary schools as:

a handicapped person (i) of an age during which non-handicapped person are provided such services, (ii) of any age during which it is mandatory under state law to provide such services to handicapped persons, or (iii) to whom a state is required to provide a free appropriate public education under section 612 of the Education of the Handicapped Act.

fines a qualified handicapped person with respect to employment, 34 C.F.R. § 194.3(k)(1), educational services, 34 C.F.R. § 194.3(k)(2), post-secondary and vocational education services, 34 C.F.R. § 194.3(k)(3), and other services. 34 C.F.R. § 194.3(k)(4). The Rothschilds do not seek to enroll in the Ramapo public schools. Rather, they seek to participate in extracurricular services provided by the school district, specifically those requiring or permitting parental involvement. Thus, our inquiry must focus on the "other services" provided by the school district governed by subsection (k)(4), not the "educational" services referred to in subsection (k)(2).

A qualified handicapped person with respect to other services is one "who meets the essential eligibility requirements for the receipt of such services." 34 C.F.R. § 194.3(k)(4); *cf. Bonner v. Lewis*, 857 F.2d 559, 563 (9th Cir.1988) (applying Justice Department regulations promulgated under Rehabilitation Act to deaf prison inmate). The plaintiffs argue that they meet all the "essential eligibility requirements" for participation in school district meetings, teacher conferences and other parent activities, i.e., they have children enrolled in school district schools and they have received invitations and requests to participate in conferences and events. The defendants, on the other hand, argue that the term "other services" does not apply to public school districts. This argument is unsupported by the construction of the regulation which groups "other services" with the definitions of other public school activities. The defendants also argue that even if subsection (k)(4) applies to public schools, the plaintiffs are not qualified to participate in the services provided. Specifically, the defendants contend that parent-teacher conferences and similar programs are designed solely for the benefit of the student; the parents, therefore, are not eligible to participate. This argument is patently without merit. While certainly the purpose of maintaining a strong parent-teacher relationship is to benefit the student, that

aim cannot be reached without the parent's participation. Consequently, we think that "other services" must include meetings and programs for parents and teachers in aid of the student's academic success.

Particularly persuasive on this issue are rulings from the Office for Civil Rights of the United States Department of Education ("OCR").[5] In *Case No. 02–89–1054, Sherburne–Earville School District*, the complainant, a deaf employee of the school district and a parent of children attending the district's schools, alleged discrimination by the district for its failure to provide an oral interpreter during an accounting workshop for employees and during a college financial aid presentation for parents. By opinion letter dated April 18, 1989, the OCR determined that

> [w]ith respect to other services, a handicapped person is one who meets the essential eligibility requirements for the receipt of such services. The injured party, as a parent, is entitled to participate in activities and programs which affect her children. See 34 C.F.R. § 104.3(k)(4). OCR, therefore, concludes that the injured party is a qualified handicapped person.

*Case No. 02–89–1054, Sherburne–Earville School District*, p. 2 (attached to plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss as "Attachment 1"). Similarly, in an opinion letter published in the *Education for the Handicapped Law Report*, the OCR stated that "handicapped parents are considered beneficiaries of school district programs offered to parents pertaining to the academic progress of the children." 305 Educ. Handicapped L.R. 48–49 (June 11, 1988). Finally, in 305 Educ. Handicapped L.R. 17 (February 13, 1987), the OCR stated that

> [i]t is our opinion that a recipient school district does have the responsibility to provide auxiliary aids as necessary to allow the participation of hearing impaired parents in school programs and activities to the same degree as other

5. Because the OCR is also the body that promulgated the regulations at issue on this motion, their opinion letters are entitled to deference.

parents.... A deaf parent would certainly be a qualified handicapped person with regard to parent participation in school programs or activities.

*Id.* at 18.

We are somewhat troubled by the notion that the school district, and in turn the taxpayer, should bear the financial burden of providing hearing impaired parents with an interpreter to ease their participation in all of the plethora of school-sponsored activities. Whether the district's responsibilities extend to school plays, athletic events and other voluntary extra-curricular activities is a difficult question.[6] Where the services in which the parents seek to participate, however, are school-initiated conferences incident to the academic and/or disciplinary aspects of their child's education, as they are in this case, we think it clear that the parents are entitled to participate to the same extent as non-handicapped parents. In sum, we are convinced that the plaintiffs are otherwise qualified to take part in the parent-teacher programs in which they seek to participate.

### III. *Affirmative Responsibility*

The defendants next contend that although section 504 prohibits a public school district from excluding handicapped persons from its programs or activities for which the handicapped person is otherwise qualified, it does not impose a duty upon the district to take any affirmative action. Thus, the defendants argue that they are not required to provide a sign language interpreter to the plaintiffs.

■ In *Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), the Court recognized that the "line between a lawful refusal to extend affirmative action and illegal discrimination" is not always clear. *Id.* at 412, 99 S.Ct. at 2370. The onset of technological advances may create opportunities to rehabilitate the handicapped without imposing large financial and adminis-

trative burdens on the state. *Id.* Thus, cases may arise "where a refusal to modify an existing program might become unreasonable and discriminatory." *Id.* at 412–13, 99 S.Ct. at 2370. Stated differently, "an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers." *Alexander v. Choate*, 469 U.S. 287, 301, 105 S.Ct. 712, 720, 83 L.Ed.2d 661 (1985). Meaningful access means "reasonable accommodations in the grantee's program or benefit." *Id.* Indeed, the Second Circuit has held that "section 504 does require at least 'modest affirmative steps' to accommodate the handicapped." *Dopico v. Goldschmidt*, 687 F.2d 644, 652 (2d Cir. 1982).

"Meaningful access" for a deaf parent may mean more than accommodation for a privately retained sign language interpreter. Based on the foregoing authority, it cannot be said, as a matter of law, that the defendants will not be required to take the affirmative action sought by the plaintiffs.

### IV. *Exhaustion of Administrative Remedies*

■ The defendants next argue that the complaint should be dismissed for failure to exhaust administrative remedies. Section 504 of the Rehabilitation Act, unlike section 501 of that act, does not explicitly require the exhaustion of administrative remedies. The regulations promulgated pursuant to the Rehabilitation Act adopt the enforcement mechanisms of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d–2000d–4 (1981). 34 C.F.R. § 104.61 (1986). The enforcement mechanisms of Title VI in turn are identical to those of Title IX of the Education Amendments of 1972. 20 U.S.C. § 1681–1686 (1978). *Compare* 42 U.S.C. § 2000d–1 (1981) (Title VI) *with* 20 U.S.C. § 1682 (1978) (Title IX); *see also Cannon v. University of Chicago*, 441 U.S. 677, 695–96, 99 S.Ct. 1946, 1957, 60 L.Ed.2d 560 (1979)

---

**6.** *But see Case No. 09–84–11–2, Newark Unified School District* at 3 (attached to plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss as "Attachment 2") (OCR determined that deaf parents of public school children were qualified handicapped individuals with respect to a graduation ceremony open to the families and friends of graduating students).

("Both statutes provide the same administrative mechanism for terminating federal financial support for institutions engaged in prohibited discrimination.").

Under these procedures, the complainant is not permitted to participate in the administrative investigation or subsequent enforcement proceeding. Neither do the statutes specifically provide for relief to the complainant. Consequently, Title IX has been construed as creating an implied private right of action without prior resort to administrative remedies. *Cannon v. University of Chicago*, 441 U.S. 677, 706–08 n. 41, 99 S.Ct. 1946, 1962–63 n. 41, 60 L.Ed.2d 560 (1979). For similar reasons, many federal courts have held that a private individual may sustain an action under section 504 of the Rehabilitation Act without exhausting administrative remedies. *See, e.g., Pushkin v. Regents of the University of Colorado*, 658 F.2d 1372, 1382 (10th Cir. 1981); *Camenisch v. University of Texas*, 616 F.2d 127, 136 (5th Cir.1980), *judgment vacated on other grounds*, 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981); *Philipp v. Carey*, 517 F.Supp. 513, 520 (N.D.N. Y.1981); *Chaplin v. Consolidated Edison Co.*, 482 F.Supp. 1165, 1174 n. 12 (S.D.N.Y. 1980); *Whitaker v. Board of Higher Educ.*, 461 F.Supp. 99, 107–09 (E.D.N.Y. 1978).

Thus, we think it clear that section 504 of the Rehabilitation Act does not require first resort to administrative remedies. Consequently, this action will not be dismissed for failure to exhaust administrative remedies.

## V. *The Rehabilitation Act and § 1983*

■ The defendants further move to dismiss on the ground that discrimination on the basis of handicap does not give rise to a cause of action under 42 U.S.C. § 1983. A claim under section 1983 may not be maintained where another federal statute provides the exclusive avenue of enforcement for the protected rights. *Cf. Zombro*

*v. Baltimore City Police Dep't*, 868 F.2d 1364, 1369 (4th Cir.1989) ("The provisions of the ADEA [Age Discrimination in Employment Act] ... evidence congressional intent to foreclose actions for age discrimination under § 1983."). The rationale underlying this determination is that "Congress has enacted a comprehensive statute specifically designed to redress grievances alleged by the plaintiff." *Id.* Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, however, "confers substantive rights but provides no exclusive remedies." *Philipp v. Carey*, 517 F.Supp. 513, 520 (N.D.N.Y. 1981). The Rehabilitation Act does not encompass a comprehensive enforcement scheme. Rather, the courts have construed the statute as creating an implied private right of action. *Id.* Although the issue has not yet been addressed by the Second Circuit, we think it clear that "§ 504 [is] not so comprehensive as to '[leave] no room for additional private remedies under § 1983.' " *Conlon v. City of Long Beach*, 676 F.Supp. 1289, 1298 (E.D.N.Y.1987) (quoting *Wright v. Roanoke Redevelopment and Hous. Auth.*, 479 U.S. 418, 107 S.Ct. 766, 771, 93 L.Ed.2d 781 (1987)). Thus, in the absence of evidence of congressional intent to the contrary, we conclude that § 504 of the Rehabilitation Act does not preclude an action pursuant 42 U.S.C. § 1983 based on handicap discrimination.[7]

## VI. *Qualified Immunity*

■ Finally, the defendants argue that they are entitled to qualified immunity under the standard established in *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18, 102 S.Ct. 2727, 2737–38, 73 L.Ed.2d 396 (1982). Only the individual defendant, Charles Grottenthaler, may be eligible for qualified immunity. The good faith immunity created by *Harlow* applies only to "government officials performing discretionary functions." *Id.* at 818, 102 S.Ct. at 2738. Consequently, the following analysis has no bearing on

---

7. We note, however, that we cannot perceive any relief that might be available under a section 1983 action which could not be obtained under the Rehabilitation Act. *See Conlon v. City of Long Beach*, 676 F.Supp. 1289, 1298–99 n. 12

(E.D.N.Y.1987) (damages available under § 504); *Wilder v. City of New York*, 568 F.Supp. 1132, 1135 (E.D.N.Y.1983) (same); *Patton v. Dumpson*, 498 F.Supp. 933, 939 (S.D.N.Y.1980) (same).

the liability of the defendant Ramapo Central School District.

Under the above-referenced rule, government officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Id.* Thus, we must determine whether the application of section 504 to the plaintiffs in the circumstances presented by this case was clearly established at the time the defendant Grottenthaler made his decision to deny the plaintiffs their requested relief.

There is no question that the defendant was aware of the proscriptions and requirements of the Rehabilitation Act. Indeed, when presented with the plaintiffs' demands, the defendant consulted with counsel and proceeded only after being advised that section 504 did not require the defendant to supply a sign language interpreter to the plaintiffs. Our conclusion today that section 504 may require further action by the defendant is based not on clearly defined principles of law but on constructions and conclusions posited by various courts. Indeed, none of the issues discussed above have been ruled on by the Second Circuit. Accordingly, it cannot be said that the law, as applied to the facts of this case, was so clearly established that the defendant could fairly be said to "know" that his decision to deny the plaintiffs' request for an interpreter would be unlawful. Thus, the defendants' motion to dismiss the claim for damages against defendant Grottenthaler is granted.[8]

### VII. *Conclusion*

In sum, the defendants' motion to dismiss the complaint is granted as to defendant Grottenthaler's liability for civil damages and denied in all other respects.

SO ORDERED.

---

**8.** Good faith immunity under *Harlow* applies only to claims for civil damages and does not diminish the availability of equitable remedies such as a declaratory judgment or an injunction. *Harlow v. Fitzgerald,* 457 U.S. at 819 n. 34.