EVA N., et al., Plaintiffs,

v.

John BROCK, et al., Defendants.

Civ. A. No. 88–40.

United States District Court,
E.D. Kentucky,
Frankfort Division.

May 31, 1990.

Ava Crow, Barbara Kibler and Sammie Lambert, Dept. of Public Advocacy, Frankfort, Ky., for plaintiffs.

J. Gary Bale and Steven D. Yater, Office of Legal Services, Dept. of Educ., Frankfort, Ky., Jack E. Ruck, Louisville, Ky., for defendants.

## OPINION AND ORDER

BERTELSMAN, District Judge.

### I. INTRODUCTION

This is an action for declaratory and injunctive relief under the Education For All Handicapped Children Act (EAHCA), 20 U.S.C. §§ 1400 et seq.; Section 504 of the Rehabilitation Act (Section 504), 29 U.S.C. § 794; and 42 U.S.C. § 1983.

The parties to the case include Timmy H., a blind child suffering from other handicaps, including mental retardation, who is the plaintiff. Timmy is also class representative for a class of children similarly situated.[1] The defendants are John Brock, in his official capacity as Superintendent of Public Instruction, and other officials of the Department and members of the State Board of Education in their official capacities. Certain alumni of the Kentucky School for the Blind were permitted to intervene by the court to represent the interests of that institution.

The Kentucky School for the Blind (KSB) should be identified at this point, although as a state institution controlled directly by the State Board of Education (KRS 156.-010; KRS 167.150), it is not a separate party. KSB's admissions criteria are the principal issue in the case. The school is an institution located near Louisville which traditionally has had the mission of educating visually handicapped children, whose other handicaps are not too serious.

This case is incomprehensible without an understanding of the human factors involved. All parties cite a welter of confusing and sometimes contradictory state and federal regulations and a surfeit of educational jargon. But what the case really boils down to is a fight over the proper way to educate visually handicapped children.

As my eminent predecessor, Judge Swinford, once remarked in deciding a school case, "The most sensitive nerve in the human body is the parental nerve." That aphorism is certainly applicable to this case, especially if those *in loco parentis* such as educators, are included.

What the case boils down to is an argument between two constituencies of visually handicapped children. The argument is about the proper role of KSB. One group, which may be called the Traditionalists, believes that KSB should maintain its historical mission, pursued since its foundation in 1842. That is, that it should concen-

---

1. The class is being certified by a separate order entered concurrently herewith.

trate its efforts on educating those blind children whose handicap is primarily visual and who can be educated to a point where they can pursue at least some form of independent living.

The other group, the Non–Traditionalists, believe that most of such children would be better off in their local school districts, if some special visual coping courses were installed there. The Non–Traditionalists want KSB to change its focus to the more numerous group of other blind children who have multiple handicaps, mental and physical, besides blindness.

Some of these children have profound handicaps. For example, the named plaintiff, Timmy, who is eight years old, is not yet toilet trained, has a mental age of about two years, and even with a one-on-one teacher-pupil ratio, has made minimal progress in two years at KSB, where a special program has been designed for him pending the outcome of this litigation.

The Non–Traditionalists believe the multi-handicapped children are neglected in their local school districts, and that proper programs for such children are rarely available there. The Non–Traditionalists, primarily parents and special educators of multi-handicapped children from local school districts, gaze enviously on the ample resources of KSB, and would like to pre-empt them, at least in part, for their own constituency.

The Traditionalists, primarily the faculty and alumni of KSB, wish to maintain the status quo. They fear that, if multi-handicapped children are admitted to KSB it will assume the aura of a school for the retarded and parents of blind children of normal intelligence will not want to send them there.

The court was highly impressed with the sincerity, selflessness and tirelessness of all the educators for both factions, who have testified in this case. It is unfortunate that they could not reach some amicable resolution to this controversy, but the ultra-sensitive parental nerve has apparently prevented a compromise. Therefore, it is up to the court to decipher the welter of statutes and regulations, jargon and acronyms adduced by the various parties in support of their positions.

Since the court must make formal findings of fact and conclusions of law in this case, we shall begin.

## II.  PROCEDURAL BACKGROUND

Plaintiff, Timmy H., is a visually-impaired, hearing-impaired, and mentally-retarded child, who is now eight years old. Eva N. is his custodial parent. In April 1987, an Admission and Release Committee (ARC) of the local school district in which he resides, convened and developed an "individualized education program" (IEP) for Timmy.

The ARC concluded that Timmy was not making adequate progress in his current placement, that the local school district could not appropriately serve him in a local program, that he needed a residential placement, and that Timmy should be placed at the KSB, which has the facilities for a residential educational placement for visually-impaired school-age children. Timmy currently does not meet all of KSB's admission criteria, and was rejected for admission to KSB.

Timmy's parents requested a due process hearing, and because they agreed with the placement decision of the ARC, asked that KSB be named as the respondent. They sought to have the hearing officer determine if Timmy should be placed at KSB; no other options were considered at that point. In response to the request, the former head of the Kentucky Department of Education's Office of Education for Exceptional Children (OEEC) took the position that KSB was not the proper respondent and also that the hearing officer had no authority to order placement in a particular facility. Timmy's parents withdrew their request for a hearing and filed suit.

The complaint is styled as a class action. Plaintiff seeks to represent the class of children who are visually impaired and have one or more additional handicapping conditions; whose ARC's have determined or will determine placement should be made at KSB; who may be in need of

related services; who have been or will be rejected for admission by KSB under its admission criteria; and who are without an effective administrative remedy because a separate procedure exists for KSB eligibility determinations. Plaintiff also seeks to represent the parents of such children.

Defendants are the Kentucky Department of Education (Department); the Superintendent of Public Instruction; the head of OEEC; the Coordinator of Procedural Safeguards of OEEC; the State Board of Education (State Board);[2] the individual members of the State Board; and the Superintendent of KSB. The individual defendants are sued in their official capacities only. In addition, the National Federation of the Blind of Kentucky, Inc., the Kentucky Council for the Blind, Inc, the Alumni Association of KSB, as well as several current and prospective students of KSB and their parents, were permitted to intervene as defendants.

This court ordered that the "individual" issues concerning the appropriate placement for Timmy be bifurcated from the "institutional" issues raised in this case. Plaintiffs were ordered to exhaust their administrative remedies under the EAHCA with respect to the individual issues. A bench trial was scheduled for the remaining institutional issues. (Doc. 53). This matter is now before the court following a two-day bench trial, submission of additional deposition evidence after trial, and further briefing by the parties.

Plaintiffs request that the court: (1) certify this action as a class action; (2) grant declaratory relief finding that KSB's admission criteria and the separate administrative review procedures for KSB violate the EAHCA, Section 504, and the fourteenth amendment; (3) grant declaratory relief finding that ARC's are the sole entities with the authority to determine where a child will be placed; (4) grant declaratory relief finding that defendants fail to maintain a "continuum" of services for visually-

impaired children as required by the EAHCA; (5) grant declaratory relief finding that KSB fails to provide all of the related services listed in its students' IEP's; (6) grant permanent injunctive relief based on such findings; and (7) grant plaintiffs attorney's fees.

With respect to the injunctive relief sought, plaintiffs explain that they "seek neither a ruling on appropriate educational placements for children nor an order requiring placements at KSB. Plaintiffs merely seek to enjoin defendants from maintaining policies which violate the procedural requirements of the EAHCA by precluding individualized placements and by allowing KSB to ignore ARC placement decisions." (Doc. 103, p. 10). Specifically, plaintiffs seek an injunction permanently (1) prohibiting defendants from unilaterally rejecting ARC placement decisions; (2) requiring defendants to use the same due process procedures for KSB as is used for all other public educational agencies; (3) requiring KSB to provide all related services listed on its students' individualized educational programs; (4) prohibiting defendants from using any admission criteria other than consideration of the "least restrictive environment" and the child's ability to benefit from a residential program for visually impaired children; and (5) requiring defendants to maintain a continuum of placements.

## III. FINDINGS OF FACT

1. For various reasons, the population of children with visual impairments over the years has grown to include higher percentages of children that have multiple handicaps, such as blindness combined with deafness, retardation, or physical handicaps, or a combination of several of these conditions. Nationally, approximately 62% to 75% of children with visual handicaps are also multiply-handicapped. (Hart, Tr., pp. 27–34).[3]

---

**2.** In 1988, "State Board for Elementary and Secondary Education" was substituted for "State Board of Education" throughout the Kentucky Revised Statutes. Acts 1988, ch. 361, 17.

**3.** As used throughout this opinion, references to testimony at trial (Docs. 97–98) are cited in the following format: Hargan, Tr., p. 333. References to the parties' joint stipulations (Docs. 80, 90) are cited as "JS." References to deposition

2. KSB and Kentucky School for the Deaf (KSD) are divisions of OEEC and are directly operated by the state. OEEC is a division within the Department, and KSB and KSD are divisions within OEEC. The State Board, among other things, is authorized to establish the admission policies of, the curricula of, and the rules for governing KSB and KSD. (JS # 1, # 5, # 6, # 9; KRS 156.010; KRS 167.150).

3. The Department receives approximately $25 million in funds under the EAHCA. (JS # 5; Hargan, Tr., p. 337). KSB has an operating budget of 3.5 million; it is funded by general state funds and by federal funds under statutes other than EAHCA. (Hargan, Tr., pp. 337–39; Evans, Tr., pp. 378, 355–56).[4]

4. KSB and KSD are the only state-operated *schools* for children that provide residential facilities for their students. Students attend KSB and KSD tuition-free. (Hargan, Tr., p. 337; 707 KAR 1:110, Section 3(1)).

5. According to a study conducted in 1982 and 1983 by the Kentucky legislature, KSB and KSD were established in the 1800's. At this time, handicapped students were not permitted to attend public schools. The historical role of both schools was to provide educational and vocational training to deaf and blind children so that the children could become self-sufficient, rather than depend on charity for support. The schools were not intended to be "asylums" to provide permanent care for the handicapped. (Plf's Ex. 40, pp. 1, 5–6, 8–9).

6. The regulation setting forth the purpose of KSB, originally promulgated by the State Board in 1982, and amended in one respect in 1988, maintains KSB's historical role:

"The educational programs at [KSB] are designed *to meet the educational needs of blind and visually impaired students.* Special emphasis is placed on

meeting the needs of students in relation to their visual impairments. Specialized materials, techniques, and aids are used to teach academic subjects, as well as courses needed for well-rounded development, including career-vocational education, music, physical education, orientation and mobility, daily living and recreation and leisure skills. *The overall program is planned to develop each child's ability for living independently.* Counseling, off-campus programs, athletic programs, and student organizations give experiences which help develop the confidence and skills needed to deal with a variety of social situations."

(707 KAR 1:110, Section 1 (emphasis added); *see also* Evans, Tr., pp. 357–58, 361, 364–67).

7. The 1988 version of KSB's admission criteria expressly provides that concomitant handicaps will not exclude an individual, but the student's primary handicapping condition must be visual impairment. The criteria that are primarily at issue in this case are the sections pertaining to "intellectual functioning and adaptive behavior:"

"[A student at KSB must:]

"(b) Demonstrate ability for academic and vocational learning from programs available at KSB, as ascertained from a variety of sources, including but not limited to individual intellectual assessment, individual educational assessment of basic skills, behavior observations, assessment of adaptive behaviors, developmental and social history, vocational and prevocational assessments, and medical information, as appropriate. *If a prospective student does not demonstrate ability for academic and vocational learning, self-care, and independent functioning, or if extensive medical care will be required, the student will not be deemed eligible for acceptance into KSB.*

---

testimony are cited in the following format: Doc. 100, Tutt Depo., p. 1. Trial exhibits are cited by the parties' designations, *e.g.,* Plf's Ex. 1; other exhibits in the record are cited in the following format: Doc. 4, Ex. 1. The court has marked a copy of OEEC's Due Process Policy and Procedure Manual as "Court's Ex. 1."

**4.** In the past, KSB received discretionary EAHCA funds from the state for summer programs conducted between 1974 and 1982. (*See* Hargan, Tr., p. 337; Evans, Tr., pp. 355–56).

"(c) Exhibit the following basic prerequisite skills: schedule trained in toileting; acceptance of solid foods; ability to spoon feed and drink from a cup; need for minimal assistance in bathing, dressing and grooming; and. expression of his or her needs through speech or other appropriate modes of communication."
707 KAR 1:110, Section 3(4) (emphasis added).

8. KSB's superintendent explained that the school's mission is to provide students with the opportunity to gain the skills needed to become a "productive citizen." The school's goals are for its students to return to the community and be a part of it, to pursue a job that is rewarding and in line with the student's abilities, to lead a satisfying social life, and to maintain a home independently. (Evans, Tr., pp. 365–66). As a result, the criteria are designed to identify students in the "trainable mentally handicapped" range of the spectrum and above. Based on its own experience and on information requested of other such schools, KSB believes that students who fall below that point toward the "severely and profoundly mentally handicapped" end of the spectrum will benefit so minimally from its program as a result of their mental handicapping conditions, that these students would not "attain the skills of independence that is necessary for them to live according to our mission statement," even if they were sighted. *Id.* at pp. 357, 366–67.

9. Visual impairments and multiple impairments are "low incidence" handicaps, which means that there are relatively few children throughout the state with these conditions. In addition, there is a shortage of teachers, nationally and in Kentucky, who have certification in special education areas. (Doc. 87, Moseley Depo., pp. 108–109; Hart, Tr., pp. 67, 90–91, 97). KSB has thirty-one teachers, only two of which hold specialized certification other than for visual-impairments: one is certified in severe and profound handicaps, and another is certified either in trainable mentally handicapped or educable mentally handicapped. None of KSB's dormitory staff is trained in the needs for the more severely handicapped. (Evans, Tr., pp. 373, 383).

10. Under Kentucky's plan for educating the handicapped, each local school district has the primary responsibility for identifying handicapped children and providing educational programs for such children that reside in its district. Eighty-five percent (85%) of Kentucky's EAHCA funds go directly to local districts to help the districts fund their programs for handicapped children. Of the remaining EAHCA funds, 10% is put in a state discretionary fund. Even with the EAHCA funds and other state funds that are available to local school districts, the funds are not sufficient to completely cover the costs of educating children with visual-impairments. (*See* JS # 5; Hargan, Tr., pp. 337–39; Fitzgerald, Tr., p. 243; KRS 157.230; 707 KAR, Chapter 1).

## IV. CONCLUSIONS OF LAW

As shown in the Findings of Fact, the Commonwealth, through its Department of Education, has decided to take the side of the Traditionalists and confirm the KSB in its historic role. It goes without saying that the Commonwealth has the right to define its institutions as it sees fit without interference from this court, unless it is violating some federal constitutional or statutory provision. I recently had occasion to express my views on this subject for those who may be interested. *American Civil Liberties Union v. Wilkinson,* 701 F.Supp. 1296 (E.D.Ky.1988), *aff'd,* 895 F.2d 1098 (6th Cir.1990) (Christmas display on grounds of state capitol).

There are vastly more federal statutes and regulations applicable or arguably applicable to the education of the handicapped than to Christmas displays, and I venture to say that active and industrious counsel in this case have not missed a single one.

### A. Section 504 of the Rehabilitation Act

The Rehabilitation Act was passed in 1973. Its focus is on *institutions* which receive federal funds. It is not a general bill of rights for the handicapped. Plaintiffs argue that Section 504 invalidates the

KSB's admissions criteria on their face. If it were not for certain decisions of the Supreme Court and Sixth Circuit interpreting this section, plaintiffs might have a point. As it is, this argument is clearly without merit.

■ The key provision of the Act, Section 504 [29 U.S.C. § 794], reads in pertinent part:

"No *otherwise qualified* handicapped individual in the United States, as defined in section 7(7) [29 USCS § 706(7)], shall, *solely by reason of his handicap,* be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity conducted by any Executive agency or by the United States Postal Service." (emphasis added)

To begin with, it is clear that, as this statute has been interpreted, plaintiff, although certainly handicapped, is not "otherwise qualified" for the program at KSB. *See Southeastern Community College v. Davis,* 442 U.S. 397, 405, 99 S.Ct. 2361, 2366, 60 L.Ed.2d 980 (1979). As pointed out in the Findings of Fact above, the program is designed for those visually handicapped children who would be classified at least as "trainable" mentally retarded. Unfortunately, Timmy's handicaps are far too profound for such a classification. The evidence is undisputed on this point.

■ Plaintiff contends that Section 504 requires that the KSB mission and programs must be modified to accommodate Timmy and his class as a "reasonable accommodation."[5] The evidence is undisputed that to serve Timmy and his class in any meaningful way, KSB would have to hire additional instructors who possess qualifications in training the profoundly handicapped not possessed by the usual faculty. Also the mission of the institution would have to be modified. This goes beyond a "reasonable accommodation," as Section 504 has been interpreted by the courts. *Alexander v. Choate,* 469 U.S. 287, 300–01, 105 S.Ct. 712, 719–20, 83 L.Ed.2d 661

(1985); *Davis,* 442 U.S. at 410–12, 99 S.Ct. at 2369–70; *Wynne v. Tufts Univ. School of Medicine,* No. 89–1670, slip op. at 6–16, (1st Cir. April 30, 1990); *Doherty v. Southern College of Optometry,* 862 F.2d 570, 574–75 (6th Cir.1988).

As the Act has been interpreted, a "reasonable accommodation" does not include fundamental modifications of institutional requirements or programs. *Wynne, supra,* (suggesting medical school obligated to provide oral examination option to dyslexic student, but specifically noting school not obliged to give extensive individual assistance, personalized tests, or to fundamentally alter its program); *Rothschild v. Grottenthaler,* 716 F.Supp. 796, 799–800 (S.D.N.Y.1989) (indicating school required to provide some sort of interpreter or device to hearing-impaired parents of hearing-impaired children during school-initiated conferences).

Further, Section 504 dovetails with the EAHCA discussed in the next section of this opinion. If the states' obligations to a child under the EAHCA are met, Section 504 is also satisfied. 34 C.F.R. §§ 104.-33(b); *Cf., Smith v. Robinson,* 468 U.S. 992, 1016–20 & n. 20, 104 S.Ct. 3457, 3470–73 & n. 20, 82 L.Ed.2d 746 (1984).

**B. Education For All Handicapped Children Act**

**(1)** *Overview of the EAHCA*

This case must also be analyzed under the Education for All Handicapped Children Act (EAHCA). This Act has a fundamentally different approach from Section 504, which focuses on the institution. Rather, the EAHCA focuses on the individual handicapped child. It provides an elaborate administrative scheme to assure that each handicapped child is provided a "free and appropriate public education" (FAPE). This is to be accomplished by the creation and implementation of an "individualized education program" (IEP) for each handi-

---

**5.** The evolution of the "reasonable accommodation" corollary to Section 504 is described in

*Wynne v. Tufts Univ. Sch. of Medicine,* No. 89–1670, slip op., (1st Cir. Apr. 30, 1990).

capped child. As the reader can see, a facility with acronyms is essential to an understanding of the law in this area.

As the EAHCA has been interpreted the development of the child need not be maximized. Rather, a standard of reasonable progress is employed. *Board of Educ. of the Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 200–02, 102 S.Ct. 3034, 3047–49, 73 L.Ed.2d 690 (1982): *Doe v. Smith*, 879 F.2d 1340, 1341 (6th Cir. 1989); *Polk v. Central Susquehanna Intermediate Unit 16*, 853 F.2d 171, 180–82 (3d Cir.1988).

The procedures are essential to the operation of the Act and the implementation of Congressional intent. The procedures assure the involvement of the parents and the child's teachers in designing an IEP for the child. *Honig v. Doe*, 484 U.S. 305, 108 S.Ct. 592, 598, 98 L.Ed.2d 686 (1988); *Doe v. Defendant I*, 898 F.2d 1186, 1190 (6th Cir.1990); *Crocker v. Tennessee Secondary School Athletic Assn.*, 873 F.2d 933, 934–35 (6th Cir.1989).

■ The IEP is the "centerpiece" for implementation of the EAHCA. *Honig*, 484 U.S. at 311, 108 S.Ct. at 598, 98 L.Ed.2d at 686 (1988). The following, in summary, are the administrative steps for determining an appropriate IEP for a child, unless the parents and the educational authorities can agree on a program somewhere along the way.[6]

1. A local committee which usually includes the parents, the child's teachers and representatives of the local school system and any institution to which it is contemplated the child might be assigned, is convened. *See* 20 U.S.C. § 1401(19); 34 C.F.R. § 300.344. In Kentucky the local committee is called an "Admissions and Release Committee (ARC). 707 KAR 1:051, § 3.

2. If any party is dissatisfied with the IEP decided on by the local committee, an appeal lies to an independent hearing officer who must conduct an impartial due process hearing. 20 U.S.C. § 1415(b)(2); 34 C.F.R. § 300.506; 707 KAR 1:060; Court's Ex. 1, p. 9 (due process manual).

3. If any party is still dissatisfied with the IEP decided upon by the hearing officer, a further appeal lies to the state agency level. 20 U.S.C. § 1415(c); 34 C.F.R. § 300.510; Court's Ex. 1, pp. 19–21. In Kentucky this agency is called the Exceptional Children Appeals Board, Kentucky Department of Education. 707 KAR 1:080; Court's Ex. 1, p. 19.

4. A further appeal lies to the United States District Court, which has an unusually broad but not unlimited scope of review. That is, the administrative record is to be considered but must only be given "due weight." The standard is less deferential than the usual "arbitrary and capricious" administrative standard. *Rowley*, 458 U.S. at 205–06, 102 S.Ct. at 3050–51; *Roncker v. Walter*, 700 F.2d 1058, 1062 (6th Cir.1983).

5. Further appeals are available up the federal ladder as in other cases.

The Sixth Circuit has frequently emphasized that exhaustion of administrative remedies is essential before invoking the jurisdiction of the federal court, since the state authorities are in a better position than a federal judge to decide on an appropriate IEP for the handicapped child. Also, state administrative decisions are entitled to respect, although not absolute deference. *Defendant I*, 898 F.2d at 1188–89; *Smith*, 879 F.2d at 1343; *Crocker*, 873 F.2d at 935. Nevertheless there may be, as in this case, some general issues that are appropriate for class action resolution without exhaustion of administrative remedies. *Roncker*, 700 F.2d at 1063.

*(2) EAHCA Issues in This Case*

With this background we may now turn to the instant plaintiff's contentions regarding the EAHCA and its implementing

6. *See Kaelin v. Grubbs*, 682 F.2d 595 (6th Cir. 1982) (describing the Kentucky procedure in detail).

regulations. As the court understands plaintiff's position, he contends that the restrictive criteria of the KSB are invalid on their face because they violate the requirement that the state maintain a "continuum of placements." Also, in plaintiff's view, the admissions criteria limit the statutory right of local ARC's to consider KSB as an appropriate placement for a handicapped child.

The plaintiff asserts that the ARC should have the unrestricted right to place a child at KSB if this is the most appropriate placement. It is doubtful if plaintiff even recognizes that the discretion of the ARC must be limited by the appeals process outlined above.

The defendants and intervening defendants, on the other hand, contend—or at least contended at one time; their present position in their recent briefs is somewhat ambiguous—that the admissions criteria of KSB are as inviolate as if it were an independent institution. Defendants' position is that in no event may an IEP call for placement of a child at KSB, if the child does not meet the criteria.

■ In the view of the court, both of these positions are extreme and unjustified. As the court sees it, the state has a right to maintain KSB as a specialized institution with whatever criteria it desires as a matter of educational policy. The EAHCA does not give the parents the *per se* right to compel placement in a special school that offers the best educational opportunity. *See, e.g., Lachman v. Illinois State Bd. of Educ.,* 852 F.2d 290, 297 (7th Cir.1988); *Springdale Sch. Dist. #50 of Wash. County v. Grace,* 693 F.2d 41, 43 (8th Cir.1982), *cert. denied,* 461 U.S. 927, 103 S.Ct. 2086, 77 L.Ed.2d 298 (1983); *St. Louis Dev. Disabilities Treatment Center v. Mallory,* 591 F.Supp. 1416 (W.D.Mo.1984), *aff'd,* 767 F.2d 518 (8th Cir.1985); *Riley v. Ambach,* 508 F.Supp. 1222 (E.D.N.Y.1980). As *Springdale School District, supra,* indicates, placement in a state school for the blind or deaf may be contrary to the "mainstreaming" requirement of the EAHCA. It all depends on the individual child.

■ Nonetheless, the state, having accepted the funds of the federal government and acceded to the administrative and appellate scheme of the EAHCA, has an overriding duty to provide an appropriate IEP for every handicapped child capable of benefiting from one. This overriding obligation may require that some children be placed at KSB, who do not meet its criteria, if such placement is the only way an appropriate IEP can be designed for them. *See Doe v. Maher,* 793 F.2d 1470, 1491–92 (9th Cir.1986) (holding that "whenever the local agency refuses or wrongfully neglects to provide a handicapped child with a free appropriate education, that child 'can be best served' on the regional or state level"), *aff'd sub nom. Honig,* 108 S.Ct. at 607 (affirming on the question of "whether a court may order a State to provide services directly to a disabled child where the local agency has failed to do so").

■ However, the administrative scheme of the EAHCA must be followed by all parties. The state cannot ignore ARC meetings where placement at KSB is to be considered. If the ARC orders placement at KSB and the state wishes to oppose such placement it must appeal up the ladder. The same is true of the parents or local educators. The parents and local educators may not place a child at KSB over the objection of the state, except through the EAHCA administrative procedures.

In the face of the EAHCA, the state cannot maintain KSB as an independent institution as if it were the Harvard Law School. KSB is directly operated by the state. Its board of directors is the State Board of Education. It is the state that has subjected itself along with all its agencies and institutions to the EAHCA. It cannot split KSB off and make an independent entity of it for purposes of the EAHCA, when that is not its status under state law.

If the state does not wish to accept placement of a student at KSB when an ARC orders such placement, it will have to appeal, just like the parents do if they are dissatisfied with a placement. And it will

be bound by the results of the appeal, just like the parents.

If the state does not want students like Timmy to attend KSB, it is required by the EAHCA to devise some other program for them which meets EAHCA standards. The court has not been impressed with the state's efforts to do that in this case.

The procedures of the EAHCA are essential to the operation of the EAHCA. They have rigid time limits designed to produce an IEP for a child within a few months. Yet, Timmy's IEP has been in process for years. This is totally unacceptable. A child could miss several years of education while his or her IEP is strangled with red tape.

No attack on the administrative procedures is before the court at this time. The court will observe, however, that the Due Process Manual seems sufficient as written. But if the procedures *as implemented* frustrate the purposes of the Act, injunctive relief would be appropriate upon proper application. A word to the wise is sufficient.

### C. Constitutional Claims

■ Because a public education is not a fundamental constitutional right and because the handicapped are not a suspect class, the appropriate level of scrutiny in determining whether KSB's admission criteria violate the equal protection clause is the rational basis test. *E.g., City of Cleburne, Texas v. Cleburne Living Center,* 473 U.S. 432, 466, 105 S.Ct. 3249, 3268, 87 L.Ed.2d 313 (1985); *Plyler v. Doe,* 457 U.S. 202, 221, 102 S.Ct. 2382, 2396, 72 L.Ed.2d 786 (1982); *San Antonio Ind. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 35, 93 S.Ct. 1278, 1297, 36 L.Ed.2d 16 (1973); *see also St. Louis,* 591 F.Supp. at 1471 n. 90; *Ruth Anne M. v. Alvin Indep. Sch. Dist.,* 532 F.Supp. 460, 477, n. 14 (S.D.Tex.1982). Therefore, the admission criteria pass constitutional muster if they are rationally related to a legitimate government purpose.

The state has a legitimate interest in formulating and executing its policies for the education of handicapped school children, and the role assigned to KSB is entirely consistent with the goals of the EAHCA. *See Rowley,* 458 U.S. at 207–08 & n. 30, 102 S.Ct. at 3051–52 & n. 30 (quoting S.Rep. No. 94–168, U.S.Code Cong & Admin.News 1975, 1425; one of the "frequently expressed" goals of Congress in promulgating the EAHCA is that handicapped children achieve a "reasonable degree of self-sufficiency"); *Rettig v. Kent City Sch. Dist.,* 720 F.2d 463, 466 (6th Cir.1983), *cert. denied,* 467 U.S. 1201, 104 S.Ct. 2379, 81 L.Ed.2d 339 (1984); *Roncker,* 700 F.2d at 1065.

Kentucky chose to assign a limited role to KSB within its overall plan for the education of children with visual handicaps. The admissions criteria are rationally related to the limited role and are not based on an impermissible irrebuttable presumption. There is no dispute that a child needing residential placement can "benefit" from KSB's program as plaintiffs use that term, and the admission criteria are applied flexibly. (Evans, Tr., pp. 357, 361–63, 366; Greenlee, Tr., pp. 343, 346; Enoch, Tr., pp. 315–14, 316–17, 322–23, 325; Hatlen, Tr., pp. 199–200; Hargan, Tr., pp. 152, 167; Hart, Tr., pp. 44–45, 47, 50–52, 55).

It is plain that there is a level of cognitive functioning and development in self-help skills that is necessary for a student to succeed in becoming a productive citizen and to live independently. *Cleburne,* 473 U.S. at 442 & n. 9, 105 S.Ct. at 3255 & n. 9. It is not the province of this court to substitute its judgment for the state's on matters of educational policy such as which students are most likely to accomplish the goals around which KSB's program is currently designed or whether it is preferable to assign a broader role to KSB. *Cleburne,* 473 U.S. at 442–43, 105 S.Ct. at 3255–56; *Rowley,* 458 U.S. at 207–08, 102 S.Ct. at 3051–52; *Roncker,* 700 F.2d at 1058. Therefore, the court finds in favor of defendants on plaintiffs' equal protection claim. For the same reasons, the court finds in favor of defendants on plaintiffs' due process claim. *See St. Louis,* 591 F.Supp. at 1475–77.

## V. CONCLUSION

For the reasons stated above, plaintiff and his class are entitled to the following relief:

1. This action shall be certified as a class action, which certification is made by separate order filed concurrently herewith.

2. The court declares and adjudges that the Commonwealth of Kentucky Department of Education and the Kentucky School For the Blind are not separate entities under the EAHCA.

3. The court declares and adjudges that local Admissions and Release Committees cannot be precluded from considering placement of visually-handicapped students at KSB, even though they do not meet the criteria for admission set by the Department.

4. However, the court also declares and adjudges that the local ARCs may not automatically place a student at KSB who does not meet the criteria. In other words, the admissions criteria have prima facie validity, but cannot prevent placement if such is provided by an IEP as the result of the EAHCA procedures.

5. The court declares and adjudges that if an ARC wishes to consider placement of a handicapped student, who does not meet the admissions criteria, a representative of the state must be given the opportunity to participate in the ARC decisions, any dissatisfied party may appeal and the final decision must be made as provided in the EAHCA. The admissions criteria may be considered, but are not binding on EAHCA decision-makers.

6. The court further declares and adjudges that the Department of Education is the entity that has standing to participate in the EAHCA procedures and KSB has no independent standing to participate. Of course, if the Department wishes to be represented by members of the administration or faculty of KSB that is its prerogative.

7. Maintaining a "continuum of placements" as required by 34 C.F.R. § 300.551(a) is a responsibility of the state as a whole, not of the KSB as an individual agency of the state.

A separate judgment will enter concurrently herewith, pursuant to Fed.R.Civ.P. 58, embodying these rulings.

IT IS SO ORDERED.

## ORDER

■ This matter is before the court on plaintiff's motion to certify this matter as a class action. The court finds that, as to the institutional issues raised, plaintiff meets the prerequisites for maintaining a class action in that the class is so numerous joinder of all members is impracticable, there are questions of law common to the class, the claims and defenses of the representative parties are typical of the claims and defenses of the class, and the representative parties have fairly and adequately protected the interests of the class. Fed.R.Civ.P. 23(a).

Therefore, the court being advised,

IT IS ORDERED that the motion of plaintiff to certify this matter as a class action be, and it is, hereby granted, and this matter is hereby certified as a class action under Fed.R.Civ.P. 23(b)(2), with the plaintiff class defined as follows:

(1) All children who are visually impaired and have one or more additional handicapping conditions; whose Admission and Release Committees have determined or will determine placement should be made at the Kentucky School for the Blind (KSB); who may be in need of related services; who have been or will be rejected for admission by KSB under its admission criteria; and who are without an effective administrative remedy because a separate procedure exists for KSB eligibility determinations; and

(2) The parents of all such children named in numerical paragraph (1) above.

## JUDGMENT

Pursuant to the Opinion and Order entered concurrently herewith,

IT IS ORDERED AND ADJUDGED that, as to the "institutional issues" in this matter, plaintiff is hereby granted, in part, and denied, in part, the following declarato-

ry and injunctive relief sought in the complaint and supplemental complaint:

1. The court declares and adjudges that the Commonwealth of Kentucky Department of Education and the Kentucky School For the Blind (KSB) are not separate entities under the Education for All Handicapped Children Act (EAHCA).

2. The court declares and adjudges that local Admissions and Release Committees (ARC) cannot be precluded from considering placement of visually-handicapped students at KSB, even though they do not meet the criteria for admission set by the Department.

3. However, the court also declares and adjudges that the local ARCs may not automatically place a student at KSB who does not meet the criteria. In other words, the admissions criteria have prima facie validity, but cannot prevent placement if such is provided by an Individualized Education Program (IEP) as the result of the EAHCA procedures.

4. The court declares and adjudges that if an ARC wishes to consider placement of a handicapped student, who does not meet the admissions criteria, a representative of the state must be given the opportunity to participate in the ARC decisions, any dissatisfied party may appeal and the final decision must be made as provided in the EAHCA. The admissions criteria may be considered, but are not binding on EAHCA decision-makers.

5. The court further declares and adjudges that the Department of Education is the entity that has standing to participate in the EAHCA procedures and KSB has no independent standing to participate. Of course, if the Department wishes to be represented by members of the administration or faculty of KSB that is its prerogative.

6. Maintaining a "continuum of placements" as required by 34 C.F.R. § 300.551(a) is a responsibility of the state as a whole, not of the KSB as an individual agency of the state.

7. The defendants and each of them, and all persons in active concert and partic- ipation with them, ARE HEREBY ENJOINED to observe the above criteria.

8. The plaintiffs shall recover their costs herein expended. Any motion for attorney's fees shall be filed within thirty (30) days of the date of this order, pursuant to the Joint Local Rules of this court.

Pursuant to Fed.R.Civ.P. 54(b), the court certifies that this is a final and appealable order and there is no just reason for delay. The court finds that the "institutional issues" decided herein are separable from the "individual issues" yet pending. Moreover, the IEP to be arrived at for the named plaintiff depends in principal part on the resolution of the "institutional issues."